# EXHIBIT 5

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|

**New York State Division of Human Rights** _____ and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>**Anne Pagan-Di Iorio** | Home Phone (Incl. Area Code)<br>**631 277-6596** | Date of Birth<br>**04/25/1959** |
|---|---|---|
| Street Address<br>**42 Roosevelt Avenue** | City, State and ZIP Code<br>**Islip, NY 11751** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>**Police Department, County of Suffolk, New York** | No. Employees, Members<br>**More than 25** | Phone No. (Include Area Code)<br>**(631) 852-1400** |
|---|---|---|
| Street Address<br>**30 Yaphank Avenue, Yaphank, New York 11980** | City, State and ZIP Code | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Street Address | City, State and ZIP Code | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **May 21, 2014**   Latest: **September 17, 2014**
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

<u>First Amended Complaint</u>

Introduction

Anne Pagan-Di Iorio files this charge, under the ADA and the NYSHRL, because her employer, the Suffolk County Police Department (the "SCPD"), discriminated against her because of her disability from cancer, ultimately forcing her to choose between her job or her health, and even her survival.

Anne Pagan-Di Iorio was a civilian employee of the SCPD for 17 years, from September 16, 1997 until her resignation on September 17, 2014. Unfortunately, during her employment with the SCPD, in May 2013, Anne was diagnosed with stage IV head and neck cancer. Anne was granted a one year leave from her job, during which time she received medical treatment for her cancer. However, when Anne returned to work in May 2014, she was still suffering the disabling effects of chemotherapy and radiation, including anemia and extreme fatigue.

The story of Anne Pagan-Di Iorio's final months of employment with the SCPD is as follows:

First, the SCPD failed to provide Anne any reasonable accommodation for her disability. In fact, the SCPD failed to even accept or consider Anne's repeated medical requests for accommodation, under its

1

department-wide policy of accepting "no medical requests" for accommodation.

Second, the SCPD discriminated against Anne because of her disability, by mandating that she work overtime, knowing this was against her doctor's express medical advice.

Third, the SCPD harassed Anne by retaliating against her when she stated that she was not physically up to working overtime. When Anne objected, because of her disability, to assignment of additional hours beyond her regular 8 hour shift, her supervisor would order her to immediately write down her purported "denial" of overtime, and would direct her to not include any reference to her health. None of Anne's co-workers were treated similarly.

Fourth, Anne was summoned to the captain's office for a "conversation," where she was informed that with 3 or 4 refusals to work overtime, she would be sent for "medical evaluation" and found unfit for duty, implying that she would be fired.

Battling cancer and facing intolerable working conditions, Anne was effectively forced to resign from her job, less than four months after her return from medical leave. She did so despite the fact that she was doing her job and wanted to keep working.

The New York Court of Appeals has recognized that, "an employer's failure in reasonably accommodating a worker's disability to be particularly invidious because it forces the worker either to quit his or her job in order to preserve the worker's health or else to continue working without adequate protective measures and then succumb to a debilitating impairment." *Jacobsen v. New York City Health & Hosps. Corp.*, 22 N.Y.3d 824, 827 (N.Y. 2014).

## This Charge is Filed in a Representative Capacity

Anne Di Iorio brings this complaint for herself and in a representative capacity for a group of similarly situated individuals, named employees of the SCPD, who have filed or will file related ADA claims arising out of similar discriminatory treatment within the same time frame under the SCPD no-accommodation policy. Anne will also represent yet unnamed employees whose ADA claims are reasonably related to this charge and who were subjected to the SCPD conduct described in this charge, which will fall within the scope of EEOC's investigation.

## Facts

### Anne's Job And Qualifications

Anne Di Iorio was a civilian, civil service employee of the Suffolk County Police Department ("SCPD"), well qualified for her job, as she worked for the SCPD as a Public Safety Dispatcher for 17 years. Before her cancer diagnosis and medical leave in 2013, Anne had no attendance issues and no record of discipline.

The job description for a Public Safety Dispatcher I includes, under "Typical Work Activities," "operating a two-way radio communication system to dispatch public safety personnel to calls for assistance;" receiving "requests from the public or police or other public safety assistance;" and referring "non-emergency requests for assistance and information to the appropriate agency."

The job description makes no mention of overtime or mandatory overtime as a job requirement. The only reference to any sort of work schedule in the job description is the "ability to work in rotating shifts." (Ex. A).

### The SCPD's No Accommodation Policy

Even before she returned to work from her medical leave, Anne made two express, written requests for accommodation to the SCPD.

In May 2014, before her return to work, Anne submitted a letter to the SCPD from her physician, Dr. Marisa Siebel, a medical oncologist affiliated with Memorial Sloan-Kettering Cancer Center. The letter, dated May 15, 2014, stated that Anne had been treated at Sloan-Kettering for her cancer with chemotherapy and radiation and, as a result, suffered damage to her salivary glands, a limited voice capacity and difficulty with kidney function. The letter continued that Anne was returning to work at her own request. However, Dr. Siebel's express medical order in the letter was that Anne's work "should not exceed 8 hour shifts."

The SCPD rejected the note from Dr. Siebel. Anne received a call from a SCPD supervisor advising her that the medical note had to state she was "100% fit for duty."

Anne then submitted a second, revised note, with the phrase about limited voice capacity removed. SCPD made no response to the second medical note, which retained the doctor's order for a limitation of her work hours to no overtime. SCPD did not initiate any interactive process to work out a reasonable accommodation.

The SCPD's failure to respond to Anne's requests for accommodation was part of an ongoing, overall SCPD policy on medical disabilities, as reflected in an announcement made in early 2013 to a group of Public Safety Dispatchers:

> **Absolutely no request for an accommodation would be granted to anyone with a medical condition, and requests for accommodation would no longer be accepted by the Department.**

Since 2013, SCPD's "no requests for accommodation" policy has been applied to other SCPD employees with disabilities who have requested not to be assigned overtime hours.[1]

When Anne returned to her job, her cancer was not in remission. She was also anemic, extremely fatigued, and unable to walk very far. Nonetheless, she performed her job and worked her regular 40 hours.

---

[1] See the EEOC Charges under the ADA for SCPD employees Dawn Ruggiero, Charge Number: 16G-2013-04119, Kristy A. Pflug, Charge Number: 520-2014-01814, and Joseph Montaldo, Charge Number: 520-2014-03158, filed with the New York District Office of the EEOC.

3

### Discrimination and Retaliation

In addition to the SCPD's failure to accommodate Anne's disability, Anne was subjected to discrimination and retaliation because of her disability.

While some of her co-workers were exempt from overtime or were allowed to be excused from working certain shifts, the SCPD demanded that Anne work overtime, knowing it was against her doctor's advice. On June 27, 2014, Anne's supervisor orally "mandated" or ordered her to stay beyond her 8 hour shift, that same day, for overtime. Anne wrote a note to the captain of her department, advising him she did not "physically feel up to working overtime." On that occasion, a co-worker offered to work the overtime hours assigned to Anne and did so.

The SCPD made Anne number one on the list of employees to be assigned overtime, which was based on reverse seniority. She was first as a result of not having worked overtime in the prior year during her medical leave. Placing Anne at the top of the overtime list violated the protective provision of the SCPD Public Safety Dispatchers' collective bargaining contract, which states that "[s]eniority shall be a criterion in the selection of employees for overtime, *provided that such employees have the ability to do the work.*" [Italics supplied.] (Ex. B).

The mandating continued, in a new form. Apparently, to prevent her co-workers from hearing the supervisor assigning Anne overtime and their stepping up to take Anne's place, the supervisor would whisper the request for Anne to work overtime at her work station and then demand she immediately document her purported "denial" of overtime by writing it down. When this occurred, on August 3, 2014, Anne again wrote a note to the captain, advising him that she was unable to work overtime, based on her doctor's previous medical orders.

The SCPD supervisor's informal whispering to Anne at her work station, rather than in a formal meeting, and on the spot demand for Anne to document her "denial" of an order for overtime, circumvents and violates another provision of the collective bargaining agreement, which refers to the *Weingarten* rule: "[a] supervisor who wishes to meet with an employee, whereby the meeting could result in a disciplinary action, *shall notify the employee prior to the meeting* of his/her right to have a representative…present at any interview." (Ex. C).

In an attempt to protect Anne and her health, one of Anne's supervisors and her co-workers circulated a list asking who would be willing to work overtime in place of Anne. All 14 or 15 of Anne's co-workers signed the list. This well-meaning effort to work out a reasonable accommodation was subsequently rejected by the captain.

### Harassment

In August of 2014, Anne was called before her supervisors twice: once by the captain and once by her immediate supervisor.

4

On August 8, 2014, Anne was called to the captain's office for a "conversation," and informed Anne that with 3 or 4 refusals to work overtime, she would be sent for "medical evaluation" and found unfit for duty, implying that she would be fired.

On August 27, 2014, she was again called, this time to the back office by her supervisor, for counseling, a precursor to discipline. The reason was that, back in June 2014, she had to miss 1 day of work because of a non-elective doctor's appointment,. Anne had called in to work that day and brought a doctor's note when she returned to work. Other employees were not usually counseled for missing 1 day of work, and some had missed many more days with no counseling.

## Constructive Discharge

Anne was able to work her regular schedule and wanted to continue to work at the SCPD, but she found the working conditions increasingly stressful, threatening and intolerable, given her medical condition. She had hoped that with continuing medical care, she would be free of cancer and she expected in a year's time to recover from the side effects of the radiation and chemotherapy. Rather than stay at her job, with added risk to her health and survival, under the threat of being fired, she resigned on September 17, 2014.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |
| _____   _____<br>Date                  Charging Party Signature | |

EEOC Form 5 (11/09)

5