

Daniel P. Farrell, President

# AGREEMENT
# COUNTY OF SUFFOLK
# AND
# SUFFOLK COUNTY ASSOCIATION
# OF MUNICIPAL EMPLOYEES, INC.

September 27, 2013 – December 31, 2016

White Collar Unit No. 2

With

January 1, 2014 – December 2008

Exhibit 1

9/27/13

## STIPULATION OF AGREEMENT
## BETWEEN
## THE COUNTY OF SUFFOLK
## AND
## SUFFOLK COUNTY ASSOCIATION OF MUNICIPAL EMPLOYEES
## BARGAINING UNITS NO. 2 AND 6

Stipulation of Agreement made and entered into this 18th day of September 2013, by and between the County of Suffolk and the Suffolk County Association of Municipal Employees ("AME").

1. The provisions of the present Collective Bargaining Agreements (Blue and White Collar) will continue except as modified by this Agreement.

2. Term of Agreement (Section 20 (3rd ¶)). Four years, effective January 1, 2013 through December 31, 2016.

3. Wage Rates (Section 5; Appendix A).

Effective July 1, 2015, each step of the salary schedule will be increased by 1%. Effective December 1, 2015, each step of the salary schedule will be increased by an additional 1%. Effective July 1, 2016, each step of the salary schedule will be increased by an additional 3%. The new salary schedules are attached to this Agreement as Attachment "A."

Effective for all employees hired on or after the date on which the 2013-2016 Agreement is fully ratified and approved, the salary schedule will be amended to add a new starting salary for grades 2-10 that will be 1% less than that for the corresponding grades in the salary schedule for those hired before that date. In addition, the starting salary for grades 11-26 will be 3% less than that for the corresponding grades in the salary schedule for those hired before that date. In addition, the starting salary for grades 27 and above will be 5% less than that for the corresponding grades in the salary schedule for those hired before that date. For all grades, the reduced starting salaries will be denoted as the "starting salary" and a new step 1 will be added that will be permanently equidistant between the new starting salary and step 2.

Effective upon the date on which the 2013-2016 Agreement is fully ratified and approved, the 5th paragraph of Section 5 (on page 3) will be deleted.

4. Step Movement (Section 5)). All employees hired on or after the date on which the 2013-2016 Agreement is fully ratified and approved will remain in the starting

1

9/27/13

salary for a minimum of 18 complete calendar months before becoming eligible, pursuant to the procedure set forth in this Section for those hired before the date on which the 2013-2016 Agreement is fully ratified and approved, to move to the next step; i.e., the new Step 1, on July 1. Employees will become eligible to move to Steps 2-6, pursuant to the procedure set forth in this Section for those hired before the date on which the 2013-2016 Agreement is fully ratified and approved, on the January 1 or July 1 occurring on or after the completion of the next 18 consecutive calendar month period, provided that they are on payroll six calendar months (i.e., January 1 or July 1) before the date of the actual step movement. Step movement beyond Step 6 will occur after the completion of each subsequent 12 calendar month period; i.e., on January 1.

5. Lag Payroll. Effective on or after the date on which the 2013-2016 Agreement is fully ratified and approved, the existing lag payroll procedure will be amended to provide that the County Executive will have the non-reviewable discretion to institute, by not later than December 31, 2016, an additional 10 day lag that, when implemented, will not exceed one newly lagged day per pay period, and need not be implemented in consecutive pay periods. Employees will receive any deferred monies due to them upon separation from employment, at the salary rate in effect at separation.

6. Holidays (Section 8.5(A)). Effective on or after the date on which the 2013-2016 Agreement is fully ratified and approved, Lincoln's Birthday will be exchanged for the day after Thanksgiving if the AME and the County Executive determine, in writing, that this can be implemented on a County-wide calendar year cost-neutral basis.

7. Bereavement Leave (Section 8.6(B)). Effective on or after the date on which the 2013-2016 Agreement is fully ratified and approved, "immediate family" for purposes of bereavement leave only will also include son-in-law and daughter-in-law.

8. Appendix F (Job Protection). Effective on or after the date on which the 2013-2016 Agreement is fully ratified and approved, add: "The County will not, pursuant to the Civil Service Law, the Suffolk County Department of Civil Service Rules, or any other provision of law, lay-off any employee because of budgetary, governmental restructuring (including; e.g., contracting-out of work performed by any unit member, position abolition, service elimination) or any other reason. This paragraph does not apply to positions that become vacant through attrition (e.g., resignations, disciplinary terminations, retirements). This paragraph will sunset, and become null and void and of no further force and effect, as of 11:59:59 p.m. on December 31, 2016."

2

SC-0332

9/27/13

The provisions of this Agreement are subject to ratification by the AME membership, ratification by the County Executive and, for those provisions requiring the appropriation of funds pursuant to Civil Service Law section 204-a.1, the approval of the County Legislature.

Dated: September 18, 2013

**AGREED TO BY THE AME**

_____
Daniel Farrell, President/
Co-Chief Negotiator

_____
Michael J. Finland
Co-Chief Negotiator

**ASSOCIATION OF MUNICIPAL EMPLOYEES NEGOTIATING TEAM**

Suzanne K. McBride
Joanmarie Vaccaro
_____
_____
Cheryl Amuso

**NEGOTIATING TEAM ALTERNATES**

_____
Anne Marie Leonard

**EXECUTIVE BOARD**

_____
Michael J. Finland
Kevin A. William
Sal Russo

**AGREED TO BY THE COUNTY**

_____
Dennis M. Cohen, Esq.
Chief Deputy County Executive

_____
_____
_____
_____
_____

_____
_____

_____
_____
Stephanie Vaccaro

3/2/11

## STIPULATION OF AGREEMENT
## BETWEEN
## THE COUNTY OF SUFFOLK
## AND
## SUFFOLK COUNTY ASSOCIATION OF MUNICIPAL EMPLOYEES
## BARGAINING UNITS NO. 2 AND 6

Stipulation of Agreement made and entered into this 2nd day of March 2011 by and between the County of Suffolk ("the County") and the Suffolk County Association of Municipal Employees ("AME").

1. As is required by law, this Agreement cannot and does not alter or otherwise address the terms and conditions of employment of those bargaining unit members affected by PERB Case No. C-6026 (CSEA/Suffolk County Community College Decertification/Certification Petition).

2. The provisions of the 2004-2008 Collective Bargaining Agreement shall continue except as modified by this Agreement.

3. Term of Agreement (Section 19, last paragraph). Four years, effective January 1, 2009 through December 31, 2012.

4. Wages (Section 5). Effective January 1, 2011, each step of the 2008 salary schedule shall be increased by 2%. Effective January 1, 2012, each step of the 2011 salary schedule shall be increased by 2%.

5. Longevity (Section 5.1). Effective January 1, 2011, each step of the 2008 longevity schedule shall be increased by $25. Effective January 1, 2012, each step of the 2011 longevity schedule shall be increased by $25.

6. Benefit Fund (Section 7.3). Effective January 1, 2011, the rate of contribution shall be increased by $25 per member. Effective December 31, 2012, the rate of contribution shall be increased by an additional $50 per member.

7. Cancer Pool (Section 8.6(C)). Effective upon the complete ratification and approval of this Agreement, employees may donate unused accrued sick leave at any time except during the year immediately prior to their separation from service. Any time donated during this one year period shall be retroactively deducted from the pool. For every two sick days or the hourly equivalent donated, the pool will be credited with one day or the hourly equivalent.

Continued..........

SC-0334

8. <u>Personnel Files (Section 16(E))</u>. Effective upon the complete ratification and approval of this Agreement, add at the end of this section, "The answer must be submitted within 10 calendar days from the date when the material is placed in the file."

9. <u>Personnel Files (Section 16(F))</u>. Effective upon the complete ratification and approval of this Agreement, this section shall be deleted.

10. <u>Job Evaluations (Sections 17(FF) and (GG)</u>. Effective upon the complete ratification and approval of this Agreement, delete "Effective June 29, 2005."

11. <u>Hazardous Duty Pay (Section 17(N))</u>. Effective upon the complete ratification and approval of this Agreement, this section shall be deleted.

12. <u>Sick Leave Management Program</u>. A joint labor management committee, which shall be comprised of three members appointed by the Director of Labor Relations and three members appointed by the AME President, shall be established to study and recommend alternate terms for "sick leave abuser" and "chronic sick leave abuser." It is understood that criteria and other matters that are not terms and conditions of employment shall not be subject to these negotiations. The results of these negotiations are subject to bi-lateral, written agreement by the AME and the Director of Labor Relations, but not impasse procedures including fact finding. In addition, disputes regarding this section shall not be subject to Section 13 of the Collective Bargaining Agreement (the grievance and arbitration procedure) or any other third party review.

13. <u>Ratification and Approval</u>. The ratification and approval of this Agreement is made contingent upon the approval of the final sale of the John J. Foley Skilled Nursing Facility at the special meeting of the Legislature on March 3, 2011. Unless and until this contingency is satisfied, and in order to fully effectuate the intent of this provision, all of the terms and conditions set forth in this Agreement shall be held in abeyance. When and if the contingency is satisfied, then the terms and conditions of this Agreement shall be retroactively or prospectively implemented in accordance with their effective dates as described in this Agreement. In the event that the contingency cannot be satisfied, then all of the terms and conditions of this Agreement shall become null and void and as though the parties had never entered into, ratified and approved this Agreement, and the parties shall revert to their respective rights pursuant to applicable law, including the Taylor Law.

14. The provisions of this Agreement are subject to ratification by the AME membership, ratification by the County Executive and, for those provisions requiring the appropriation of funds, the approval of the County Legislature.

Continued.......

3/2/11

Dated: March 2, 2011

AGREED TO BY THE AME

*[signature: Cheryl A. Felice]*
Cheryl A. Felice, President
Chief Negotiator

AGREED TO BY THE COUNTY

*[signature: Jeffrey L. Tempera]*
Jeffrey L. Tempera, Director
Office of Labor Relations

AME NEGOTIATING TEAM

*[signature: Cheryl Amuso]*

*[signature]*

*[signature: S. Russo]*

*[signature: Robert W. Beyer]*

*[signature: Kevin A. Wilhm]*

*[signatures on right column]*

NEGOTIATING TEAM ALTERNATES

*[signature: M. R. Liu]*

*[signature: Bri J. Vrg]*

Continued.......

3

SC-0336

3/2/11

**EXECUTIVE BOARD**

_[signature]_ Frank S. C...

_[signature]_ Brian P. Kelly

_[signature]_ Michael J. Finland

_[signature]_ Dorothy N. K...

_[signature]_ Maria Nancy Rivera

_____

_____

_____

4



# AGREEMENT

# COUNTY OF SUFFOLK
# AND
# SUFFOLK COUNTY ASSOCIATION OF MUNICIPAL EMPLOYEES, INC.

## January 1, 2004- December 31, 2008

## WHITE COLLAR UNIT No. 2



IN ACCORDANCE WITH RULINGS OF THE
SUFFOLK COUNTY PUBLIC EMPLOYMENT RELATIONS BOARD,
THE WHITE COLLAR UNIT OF THE SUFFOLK COUNTY
ASSOCIATION OF MUNICIPAL EMPLOYEES, INC.
REPRESENTS ALL EMPLOYEES OF SUFFOLK COUNTY
IN BARGAINING UNIT NO. 2.

THE FOLLOWING AGREEMENT BETWEEN
THE WHITE COLLAR UNIT OF THE
SUFFOLK COUNTY ASSOCIATION OF MUNICIPAL EMPLOYEES, INC.
AND THE COUNTY OF SUFFOLK,
FOR THE YEARS
JANUARY 1,2004 THROUGH DECEMBER 31, 2008,
HAS BEEN APPROVED BY THE MEMBERS
OF BARGAINING UNIT NO. 2,
BY THE COUNTY EXECUTIVE,
AND BY RESOLUTION OF THE COUNTY LEGISLATURE.

## **PREFACE**

Agreements entered into by the Suffolk County Association of Municipal Employees, Inc. and the County of Suffolk which modify the Agreement must be signed by both the President of the Suffolk County Association of Municipal Employees, Inc. and the Director of Labor Relations and must be on file in both offices for these agreements to be binding on both the Union and the County.

**TABLE OF CONTENTS**

1.  GENERAL OBLIGATION OF THE ASSOCIATION......................2

2.  RECOGNITION:  TERM.........................................2

3.  RIGHTS RESERVED THE COUNTY.................................2

4.  OFFICERS OF THE ASSOCIATION................................2

5.  COMPENSATION:  REGULAR WAGES...............................2
    5.1  LONGEVITY.............................................5

6.  COMPENSATION:  PREMIUM PAY.................................7
    6.1  OVERTIME..............................................7
    6.2  EQUALIZATION OF THE OPPORTUNITY FOR
         AND OBLIGATION TO PERFORM OVERTIME....................7
    6.3  EMPLOYEE OPTION.......................................8
    6.4  RECALL, "CALLED-IN" WORK AND PLANNED OVERTIME.........8
    6.5  NIGHT DIFFERENTIAL....................................9
    6.6  ROTATING SHIFTS.......................................9
    6.7  LIMITATION OF APPLICATION.............................9
    6.8  COMPENSATORY TIME, USE OF.............................9
    6.9  WEATHER EMERGENCIES...................................9

7.  COMPENSATION:  INSURANCE..................................10
    7.1  HEALTH INSURANCE.....................................10
    7.2  WORKERS' COMPENSATION................................10
    7.3  BENEFIT FUND.........................................12
    7.4  LIABILITY COVERAGE...................................13
    7.5  LONG TERM DISABILITY.................................13
    7.6  DEATH BENEFIT........................................13

8.  TIME FOR PERFORMANCE OF SERVICES:  LEAVES.................13
    8.1  WORK WEEK; WORK DAY..................................13
    8.2  FLEXIBLE SCHEDULE ................................... 14
    8.3  VACATION WITH PAY:  BASIC SCHEDULE...................14
    8.4  VACATION ACCRUALS....................................14
         SCHEDULE A - 35 HOUR EMPLOYEES.......................15
         SCHEDULE B - 37.5 HOUR EMPLOYEES.....................15
    8.5  HOLIDAYS.............................................16
    8.6  LEAVE WITH PAY.......................................17
    8.7  LEAVES WITHOUT PAY...................................19
    8.8  SICK TIME............................................19
    8.9  UNUSED ACCUMULATED SICK LEAVE....................... 22

9.  JOB DESCRIPTION...........................................22
    A.   NEW POSITION.........................................22
    B.   OUT OF TITLE WORK....................................23

10. UNIFORMS..................................................23

11. MILEAGE...................................................24

12. RETIREMENT................................................24

13. DISPUTES:  GRIEVANCE AND ARBITRATION PROCEDURE............24

14. DUES DEDUCTIONS...........................................27

15. PROTECTION OF EMPLOYEES...................................27

16. PERSONNEL FILES...........................................29

17. MISCELLANEOUS.............................................29

18. LABOR MANAGEMENT COMMITTEE................................36

19. COLLECTIVE BARGAINING AGREEMENT...........................37

SALARY SCHEDULES....................................... APPENDIX A

LOCAL LAW NO. 6 - 1985................................. APPENDIX B

CHILD CARE LEAVE....................................... APPENDIX C

LONG TERM DISABILITY INSURANCE......................... APPENDIX D

CLASSIFICATION OF CRIMES............................... APPENDIX E

JOB PROTECTION......................................... APPENDIX F

BILL OF RIGHTS......................................... APPENDIX G

ELIGIBILITY FOR BENEFITS............................... APPENDIX H

WORKERS' COMPENSATION MOA.............................. APPENDIX I

DEFERRED COMPENSATION MOA.............................. APPENDIX J

CANCER POOL MOA........................................ APPENDIX K

AGREEMENT made this 27th day of May, 2005, between Suffolk County, a municipal corporation of the State of New York, having its principal place of business at the Suffolk County Center, Riverhead, New York, as employer (hereinafter referred to as the County) and Suffolk County Association of Municipal Employees, Inc., said Association being a domestic not for profit corporation, and an organization having as its primary purpose the improvement of terms and conditions of employment of public employees, having its office and principal place of business at 30 Orville Drive, Bohemia, New York 11716, as an employee organization (hereinafter referred to as "the Association" or "AME").

## WITNESSETH

WHEREAS, the County has recognized the Association as the sole exclusive bargaining representative for all employees of Suffolk County listed and included as Bargaining Unit No. 2 in the 1989 Suffolk County Classification and Salary Plan book, which is deemed to be a part of this Agreement.

This book is to be reviewed annually for accuracy with regard to the specific Bargaining Unit No. 2 by the Director of Labor Relations and the President of the Association.

All other employees in the County of Suffolk shall be excluded from this Agreement and its terms and conditions except those employed under new titles, which shall be dealt with pursuant to Section 17(D) of this Agreement.

The Management/Confidential employees as designated by New York State PERB or Suffolk County Mini PERB or by joint stipulation of the Director of Labor Relations and the President of the Association shall also be excluded. However, those employees who are designated confidential as above shall receive an additional monetary amount, above their contractual annual salary, as directed and designated by the Director of Labor Relations.

Present and/or new excluded titles and present and/or new excluded categories may be included in this Agreement upon the joint stipulation of the Director of Labor Relations and the President of the Suffolk County Association of Municipal Employees, Inc.

Those employees, as the Association represents, are hereinafter referred to as the "employees"; and

WHEREAS, the Association was on the 11th day of January, 1985, recognized by the Suffolk County Public Employment Relations Board as the representative for the purpose of collective bargaining for the employees; and

WHEREAS, the Association has affirmed in writing to the County that it does not assert the right to strike against any government, to assist or participate in any such strike or to impose an obligation to conduct, assist or participate in such a strike; and

WHEREAS, the parties desire to enter into a collective bargaining agreement setting forth the amount of wages to be paid to the employees and the terms and conditions upon which the employees work and perform their duties.

NOW, THEREFORE, by reason of the premises and in consideration of the mutual covenants herein, the parties agree as follows:

**1.  GENERAL OBLIGATION OF THE ASSOCIATION**  The Association obligates itself for its members and employees that it and each of those members and employees will faithfully perform all of the terms and conditions of this Agreement on their respective parts

1

submission of the record of said overtime. Records of overtime work must be submitted to the payroll office of each Department. The Office of Labor Relations undertakes to alert all administrators and fiscal functionaries to this requirement and to follow up, promptly, lapses in this policy.

Notwithstanding any inconsistent contract provision or practice to the contrary, all employees not covered by Fair Labor Standards Act (FLSA) Section 207(k) who are hired on or after July 1, 2006, shall be entitled to overtime as follows: at straight time for all hours worked after actually working 35 or 37.5 hours, as applicable, during the work week (Monday-Sunday), and at time and one-half after actually working 40 hours during the work week (Monday-Sunday).

Notwithstanding any inconsistent contract provision or practice to the contrary, all employees covered by FLSA Section 207(k) who are hired on or after July 1, 2006, shall be entitled to overtime as follows: at straight time for all hours worked after actually working 35 or 37.5 hours, as applicable, during the applicable FLSA work cycle, as designated by the County and at time and one-half for all hours worked after actually working the maximum number of hours in the applicable FLSA work cycle, as designated by the County.

### 6.2 Equalization of the Opportunity for and Obligation to Perform Overtime

Overtime work, as an opportunity, in the same or related title shall be equalized among Departmental employees as far as is practical. Department Heads and supervisors may require the performance of overtime or "called-in" work for reasonable periods as an obligation in cases where, because of seasonal or extraordinary requirements related to the job or because of the absence of normal personnel for whatever reason, the work is necessary to meet the normal work demands of the function of the Department or some emergency exists. Seniority shall be a criterion in the selection of employees for overtime, provided that the employees have the ability to do the work. Overtime opportunity shall be allocated by seniority on a rotating basis.

### 6.3 Employee Option

Employees shall have the option of choosing compensatory time and one-half off for overtime in lieu of paid overtime. This option shall be indicated by the end of the pay period in which the overtime has been worked.

However, at no time may an employee carry more than a maximum of 240 hours of compensatory time, except for those employees who, in accordance with the provisions of the FLSA, may accumulate a maximum of 480 hours.

Where an employee has 240/480 hours of compensatory time on the books, he/she will receive payment for any additional overtime earned. Issues as to the application of the FLSA shall be resolved in accordance with the provisions of the Act and shall not be subject to the grievance and arbitration procedure of the Agreement.

The employee shall be paid for all accumulated compensatory time upon termination of employment.

### 6.4 Recall, "Called-in" Work and Planned Overtime

An employee, who is recalled to work on his/her normal work day or is called-in or directed to work on any non-work day, shall receive a minimum of four hours pay computed at the overtime rate and in addition shall be granted a fixed travel time allowance on a portal (home) to portal (jobsite) basis of one-half hour each way computed at the overtime rate.

The employee shall remain at his/her job assignment

7

SC-0348

resulted from an injury sustained while on the job.

## 8. TIME FOR PERFORMANCE OF SERVICES

### 8.1 Work Week/Work Day

The normal workweek shall be either 35 or 37.5 hours for all employees, based upon the number of hours worked by employees in the same title within his/her Department at his/her work location.  If the title does not currently exist within a Departmental job location, the employee's workweek shall be based upon the duties of the position, the interrelations with the surrounding positions and the operational needs of the Department. No employee on the payroll prior to June 19, 1997, shall have his/her work day/work week changed as a result of the above language.  In the case of employees who work 37.5 hours a week and whose jobs require working steadily through a shift and remaining on the job site, a half-hour lunch (or eating) period shall be allowed, with the provision it be taken at the job site and uninterrupted except for emergencies.  The weekly work schedule shall be five consecutive days on plus two consecutive days off. Exceptions shall occur only on written agreement between the Office of Labor Relations and the Association.  Also excepted shall be employees assigned to work a weekly work schedule of less than five consecutive days on.

All employees hired after September 3, 2001, shall work either a 37.5 hour or a 40 hour workweek which shall be 2.5 hours more than the number of hours worked by employees in the same title within their Department at their workstation for the first year of their employment, at which time they will revert to the same number of hours as the employees in the same title within their Department at their work location.

No individuals shall be required to work more than a normal 40 hour workweek (e.g., in a work location where employees currently work a normal 40 hour workweek due to "lock-in," new employees would also work the same 40 hours).

Except for those employees whose jobs require working steadily through a shift and remain on the job site, employees shall have, at a time designated by the Department Head or supervisor, two 15 minute breaks each day, one in the morning and one in the afternoon.

All employees normally required to eat a meal on duty or on the job site shall be paid for the meal time so that personnel who work a seven hour day shall be paid seven and a half or eight hours (whichever is applicable), including meal time and employees who work a seven and a half hour day shall be paid eight hours, including meal time.

### 8.2 Flexible Work Schedule

Flexible work day and work week schedules may be implemented for various Departments as agreed to mutually by the Director of Labor Relations and the President of the Association.

Programs of flex-time shall be guided by the principle that employees receive no less or no more in salary, overtime and other benefits than if they had remained in their former schedule.

### 8.3 Vacation with Pay - Basic Schedule

Employees shall accrue vacation according to Schedule A or B.

### 8.4 Vacation Accruals

Vacation time may be accrued to a maximum of 90 work days in any calendar year.  However, only 60 days will be permitted to be carried over to the succeeding year.

In the case of death, the beneficiary is to receive payment in compensation for any unused accrued vacation time.

13

SC-0354