UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————X

KRISTY PFLUG,

                       Plaintiff,

  -against-                                  Case No. 20-cv-00018 (SIL)

COUNTY OF SUFFOLK,

                       Defendant.
———————————————————————X

## MEMORANDUM OF LAW IN REPLY AND IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

                                        DENNIS M. BROWN
                                        Acting Suffolk County Attorney
                                        *Attorney for Defendant, County of Suffolk*

                                        By: Hope Senzer Gabor
                                        Assistant County Attorney
                                        H. Lee Dennison Building
                                        P.O. Box 6100
                                        100 Veterans Memorial Highway
                                        Hauppauge, New York 11788
                                        (631) 853-5822

Dated: Hauppauge, New York
         November 3, 2023

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Clark, v. Buffalo Wire Works*
  3 F.Supp.2d 366 [WDNY 1998] ............................................................................................. 1
*Colpoys v. County of Erie,*
  2013 WL 5437635 [WDNY Sept. 27, 2013] ......................................................................... 4
*Cordoba v. Beau Dietl & Assocs.,*
  No. 02–CV–4951, 2003 WL 22902266 (S.D.N.Y. Dec. 8, 2003) ..................................... 1, 2
*Ferrara v. Sterling, Inc.*,
  2023 WL 2537424 [NDNY, March 16, 2023] ....................................................................... 6
*Laramee v. Jewish Guild for Blind,*
  72 F.Supp.2d 357 (S.D.N.Y.1999) .......................................................................................... 2
*Lewis v. Livingston County,*
  *Cir.,* 30 F Supp 3d 196 [WDNY 2014] .................................................................................. 5
*McCormack v. IBM,*
  145 F Supp 3d 258 [SDNY, 2015] ......................................................................................... 2
*Miller v. Praxair, Inc.*,
  408 F. App'x 408 (2d Cir. 2010) ......................................................................................... 5, 6
*Penn. St. Police v. Suders*,
  542 U.S. 129, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004) ..................................................... 5
*Spence v. Maryland Cas. Co.*,
  995 F.2d 1147 (2d Cir. 1993) ................................................................................................. 6
*Terry v. Ashcroft*,
  336 F.3d 128 (2d Cir. 2003) ................................................................................................... 5

Rules

Fed. R. Civ. P. 56 ............................................................................................................................ 1

**PRELIMINARY STATEMENT**

This Reply Memorandum of Law is submitted on behalf of Defendant, ("the County") in reply to the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. The Court is respectfully referred to the County's initial motion papers for its principal arguments. This Reply Memorandum of Law is limited to responding to certain arguments raised in Plaintiff's Opposition for the purpose of a more in depth analysis. For the reasons set forth herein and in the initial motion papers, Defendant is entitled to summary judgment on all causes of action, and the Complaint should be dismissed in its entirety together with any such other or further relief that the Court deems just and proper.

**ARGUMENT**

**POINT I**

**THE RELEASE SIGNED BY PLAINTIFF PRECLUDES HER FROM PURSUING THIS ACTION**

Although Plaintiff asserts that "the County forced Plaintiff to sign a release", and that the Release was "provided to Plaintiff on a take it or leave it basis and, therefore, under duress, she signed the document at the insistence of her Union representative, Barry Peek, Esq." (Pl. MOL in Opp. pg. 7), and that "Plaintiff was never afforded sufficient consultation with counsel in order to understand the import of what she was signing", (Pl. MOL in Opp. pg. 12) the fact remains that she was represented by counsel. "'[T]he enforceability of a release under New York law "is governed by ordinary contract law principles." *Cordoba v. Beau Dietl & Assocs.*, No. 02–CV–4951, 2003 WL 22902266, at *6 (S.D.N.Y. Dec. 8, 2003). "Releases are not to be disregarded and, in the absence of fraud, duress, illegality or mistake, a general release bars an action on any cause of action arising prior to its execution." *Clark*, 3 F.Supp.2d at 372–73 (alteration, citation, and internal quotation marks omitted). Thus, "a release that is clear and unambiguous and which is

1

knowingly and voluntarily entered into will be enforced." *Laramee v. Jewish Guild for Blind,* 72 F.Supp.2d 357, 359 (S.D.N.Y.1999); *see also Cordoba,* 2003 WL 22902266, at *6 (same).'" *McCormack v. IBM,* 145 F Supp 3d 258,268 [SDNY, 2015].

In addition, Plaintiff chose to execute the Release on September 3, 2013, in lieu of participating in a Section 75 hearing pursuant to NY Civil Service Law, which was scheduled on June 20, 2013, to take place on September 18, 2013. Gabor Supp. Decl. Ex CC. Plaintiff admitted that she was aware that she could attend a hearing, but on the advice of counsel, she chose to execute the Release. Gabor Decl. Ex. B, 108:19-20, 110:2-7. Further, contrary to Plaintiff's assertion in her sworn Declaration, she did, in fact receive payment as consideration for her executing the Release. At her sworn deposition, Plaintiff testified that she did receive payment. Gabor Decl. Ex. B, 108:25-109:14.

## POINT II

## PLAINTIFF CANNOT PROVE THAT SHE WAS DISABLED UNDER THE ADA

Plaintiff claims that she was diagnosed with transverse myelitis, and that she therefore suffered from a disability as defined under the ADA. While it is true that Plaintiff presented a note from her doctor prior to her return from leave, which stated a diagnosis of transverse myelitis, (Gabor Decl. Ex. F), Plaintiff testified, under oath before the New York State Unemployment Insurance Appeal Board on March 12, 2014, that she was diagnosed with same in the fall of 2011, and that it got better by the fall of 2012. Gabor Supp. Decl. Ex. DD, 11:16-13:12.

Accordingly, between the time that Plaintiff's transverse myelitis was resolved and the time that she resigned in July 2013, even though she was not disabled, she still refused to work overtime mandates, which was an essential function of her job as a PSD I. Specifically, on December 23, 2012, Plaintiff was mandated to work 4:00 am to 8:00 am, attached to her regular

2

8:00 am to 4:00 pm tour. Plaintiff did not report for the mandate at 4:00 am, but reported for her scheduled tour at 8:00 am.  Plaintiff could not recall if she communicated with anyone at the job to communicate that she would not be coming in for her 4:00 am mandated shift. 56.1 ¶ 29, Gabor Dec. Ex. B, 54:21-25. In addition, Plaintiff also refused to work a mandate on January 3, 2013.  On that date, Plaintiff sent an Internal Correspondence to Lt. Rohrer concerning the mandate.  The correspondence indicates that on that date, Plaintiff was mandated to stay at 4:00 pm, and that due to a doctor's appointment she could not work the mandate. 56.1¶ 37, Gabor Decl. Ex.  Q, Gabor Decl. Ex. B, 69:21-70:20. Because Plaintiff refused to work the mandate on January 8, 2013, a Supervisor's Complaint Report was filed stating: PSD Pflug refused a direct order by the undersigned, her direct supervsor, to stay for mandated overtime at 1600 hours. In doing so, another dispathcer was mandated to cover her AWOL.  This was not PSD Pflug's first refusal of a direct order by a Communications Supervisor for a mandate." Plaintiff knew that there would be ramifications for her refusal to work mandates, and she knew that she "was on borrowed time." Plaintiff "knew something was going to happen" and that is why she tried to quit.  56.1 ¶ 38, Gabor Decl. Ex. R, Gabor Decl. Ex. B, 70:21-71:18, 71:24-72:8.

**POINT III**

**MANDATED OVERTIME IS AN ESSENTIAL FUNCTION OF THE JOB OF A PSD**

As fully set forth in Defendant's Memorandum of Law in Support, and the exhibits referred to therein, it is undisputed that mandated overtime always was and still is an essential function of the job of a PSD. Due to staffing issues which occured after Plaintiff returned from leave in April 2012, mandated overtime became more frequent, and eventually every PSD, without exception, was required to work  the overtime.  Plaintiff cannot now assert that mandated overtime was not an essential function of her job.  During Plaintiff's unemployment hearing she testified:

3

> Q. And Ms., uh—Ms. Plug, when you took the job, do you admit that you knew hat overtime was part of the package, that you were—
>
> A. Yes. It said—when they—it said you may be mandated and that did happen.

Gabor Supp. Decl. Ex. DD, 15:24-16:3

Plaintiff's supervisor, Petrina Hubner, PSD II, also testified at the unemployment hearing. As concerns mandated overtime:

> A….mandated overtime and overtime was a requirement of the job, and that it could not be—there weren't exemptions, and you are either fit for duty or unfit for duty.
>
> Q. Okay.
>
> A. And we do not accept exemptions for any employees now.

Gabor Supp. Decl. Ex. DD, 29:12-20.

> Q. Okay. All right. And, um, you've heard the claimant's testimony today. Um, you had an opportunity to review the exhibits that the claimant submitted to the Judge at the last hearing. Do you have any comments or any further testimony concerning her testimony or the exhibits?
>
> A. Um, she has acknowledged the fact that overtime is part of the job. And that's really the –issue is it is a requirement. At orientation, it's discussed, at hiring. Um, it – it's something that is part of what we do.

Gabor Supp. Decl. Ex. DD, 30:7-17.

In support of her argument that mandated overtime was not an essential function of her job, Plaintiff cites to *Colpoys v. County of Erie,* 2013 WL 5437635 [WDNY Sept. 27, 2013]: "**Indeed, courts must make an 'initial inquiry' into whether the 'employer actually requires all employees in the particular position to perform the allegedly essential function.**" "Here, Colpoys alleges that other employees were in fact not required to perform this allegedly essential function; he claims that the County permitted other employees to deviate from the very eight-hour overtime shift that the County now claims is essential." *Id.* at *5 (emphasis added). The facts in

4

*Colpoys* differ substantially from the instant matter. Firstly, the decision is based on a motion to dismiss as opposed to a motion for summary judgment. Secondly and more important, the Court clearly makes the distinction that other employees were not required to work overtime. Here, it is undisputed that **ALL** PSD's were required to work mandated overtime and that no one was exempted from performing this essential function of the job. Plaintiff also cites to *Lewis v. Livingston County Cir.,* 30 F Supp 3d 196 [WDNY 2014] to bolster her argument. However, the Court clearly states that: "whether the ability to work mandated overtime is an essential function of Plaintiff's employment is a fact-specific inquiry that the Court is unable to decide on a **motion to dismiss**." *Id.* at 209 (emphasis added). Again, the instant motion is for summary judgment, not one for a motion to dismiss.

### POINT IV

### PLAINTIFF DID NOT SUFFER ANY ADVERSE EMPLOYMENT ACTION

Altough not specifically pled in her Complaint, Plaintiff argues that she was "constructively discharged" and therefore suffered an adverse employment action. For that reason alone, it is respectfully submitted that this Court should not consider Plaintiff's argument. It is undiputed that Plaintiff resigned from her employment with the County on July 4, 2013. 56.1 ¶ 2, Gabor Decl. Ex. B, 5:6-12.

"To establish a constructive discharge claim, 'a plaintiff must show that the employer 'intentionally creates a work atmosphere so intolerable that [the employee] is forced to quit involuntarily.' " *Miller v. Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir. 2010) (summary order) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003)). " 'The inquiry is objective: Did [the] working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?' " *Id.* (quoting *Penn. St. Police v. Suders*, 542 U.S. 129, 141,

5

124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004)). The Second Circuit has clarified that this standard "is a demanding one, because 'a constructive discharge cannot be proven merely by evidence that an employee ... preferred not to continue working for that employer' or that 'the employee's working conditions were difficult or unpleasant.' " *Id.* (quoting *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993)). Plaintiff did not allege a cause of action for constructive discharge under the ADA." "Thus, to the extent that Plaintiff argues that his alleged constructive discharge in violation of the ADA and NYSHRL was based on disability, the Court rejects that claim." *Ferrara v. Sterling, Inc.*, 2023 WL 2537424 at *9 [NDNY, March 16, 2023]. Similarly, in the instant matter, since Plaintiff failed to plead a cause of action for constructive discharge, it is respectfully submitted that this Court should likewise, reject this claim.

## POINT V

## DEFENDANT DID NOT RETALIATE AGAINST PLAINTIFF

In her opposition, Plaintiff claims that she was retaliated against when disciplinary charges were lodged against her. Plaintiff argues that the doctor notes she submitted amount to protected activity, and that she complained about being subjected to a "hostile work environment". As set forth in Defendant's Memorandum of Law in Support, although Plaintiff was brought up on departmental charges, she cannot maintain that those charges were as a result of her alleged 'protected activity" of complaining about a "hostile work environment".

Plaintiff refers to an April 16, 2013 note addressed to Lt. Roher (Pflug Decl. Ex. 12), and an April 22, 2013 note addressed to Lt. Roher (Pflug Decl. Ex 13). While the April 16, 2013 note alludes to Plaintiff being "subjected to a hostile work environment", it contains no specifics and concludes with Plaintiff requesting time with her union representative to write an additional note. The note makes no reference to Plaintiff's alleged disability. Likewise, the April 22, 2013 note

6

makes no reference to Plaintiff's alleged disability. Instead, it references her breaks for breastfeeding and her perception that because of that she had been subjected to a hostile work environment. It should be noted that Plaintiff's Complaint does not contain a cause of action for gender under Title VII-which is where her allegations concerning a hostile work environment due to her breast-feeding would be addressed.

As concerns Plaintiff's argument that the disciplinary charges lodged against her were in retaliation for her complaints about being mandated to work mandated overtime, out of the fourteen charges of misconduct, **only three involved disobedience of orders for failing to report for mandated overtime,** eight involved her absences from work which lacked sufficient accruals to cover the absences, two involved absences without leave for her failure to report for an extra day of work ("X day") and one involved her failure to renew her Department Identification Card to reflect a name change.

## CONCLUSION

For all the reasons and arguments presented, Defendant's motion pursuant to Federal Rule 56 should be granted in its entirety.

Dated:  Hauppauge, New York
      November 3, 2023

Yours, etc.
DENNIS M. COHEN
Suffolk County Attorney
*Attorney for Defendant*
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788-0099
(631) 853-5822

*Hope Senzer Gabor*
By: Hope Senzer Gabor
Assistant County Attorney

7